All right. Welcome to day three of the West courtroom panel. Judge Higginbotham, Judge Costaner. We've had a robust time with a mixture of cases. We've got some variety this morning. I think everybody who's here is familiar with the system. The only one I'd like to repeat is just to stay in that microphone so that we can hear you up here, but also because we recorded and oftentimes if you get conversational, the tape is not picking up accurately what you're saying. Having said that, we'll call the first case United States v. Westbrooks. Mr. Esmeyer, you're up, sir. Count one fails to allege an offense in that it failed to have the element that the appellant must have known of a pending IRS action and thus engaged in obstruction of conduct in order to impede that specific pending IRS action. May it please the court, honorable counsel, my name is Mike Esmeyer Sr. and I represent Tamny Denise Westbrooks. Our first point in the case is that the district court failed to dismiss the case on pre-trial motion, and that failure worked all the way through the case and prejudiced my client during the trial itself in that it brought in and alleged things that were extraneous to the counts of failure to properly perform her tax papers. So while we depend upon the case from the Sixth Circuit and OGBA's Zeon is still pending before the Sixth Circuit, again, that's the most recent case from the Sixth Circuit, but we depend upon Minor and Kassoff, there are Supreme Court precedents that properly overlay both the Sixth Circuit and those circuits that go the other way, that say that you do not have to allege that element in order to avoid vagueness. In U.S. v. Aguilar, the Supreme Court looked at 18 U.S.C. section 1503, and nearly every court that looks at it says that is the most analogous statute to 26 U.S.C. 7212A, and therefore, that is the case that should be looked at and should have precedents before the Fifth Circuit. The government points to U.S. v. Reeves and says, oh, well, this circuit has decided that. Well, the issue of whether or not there is an additional element to 7212A was not before Reeves, and therefore, it is not presidential or precedent to this court or to this panel. But not only is Aguilar in our favor, but also the Supreme Court case of Arthur Anderson. Don't those other statutes have the word preceding in them, whereas the tax statute doesn't? How do you get around that? I get around that by the fact that that word is not the word that is dominant. The word, the issue that is dominant is whether or not you have to have, well, going back historically, what happened was the tax protesters were doing mean things to IRS agents, and so 7212A was, and that's the first part. We're talking about the omnibus clause now, but the first part goes to threats to IRS agents, going out and burning down their house, going out and filing liens against them, things that were happening in the time frame that 7212A was passed by Congress. What has happened is that they, the courts, some courts, but the prosecution in particular, and particularly the IRS, has taken 7212A, the second part, the omnibus clause, and said, well, we're doing our job all We look at tax reforms and things like that and say, so if you impede that, it's the same as impeding a proceeding. But I think the, if I can look at 7212A for a moment, the due administration of this, including, let me see, in, or endeavors or obstructs or impedes, the due administration of this title shall, upon conviction there, be fined or imprisoned not more than three years or both. So the due administration of this title, the problem is, if you take the government at its word and you say anything that the IRS does, if you impede it, if you decide that you're going to set up false tax shelters in the Bahamas, that also, not only do you have a 7201 or 7206, but you also are in violation of this statute, it would make every tax act doubly punished. It would make every tax act subject to the omnibus clause. So the fact that the word proceeding is not in there doesn't, the viable word is administration of this title, and I admit that. But you have to have some limitation or it's overly vague. What does that mean? Well, hasn't our precedent said corruptly, requiring that the act be done corruptly prevents vagueness? All right. First of all, corruptly does not have a definition except by this Court. And most circuits I'm sorry, sir. How about raised to find corruptly? It does. And I think every circuit that I saw It says it's with a meaning, with an intent to give some advantage inconsistent with the rights and duties that are not available to others. So you take one term, which is not defined in the statute, and you define it, but that doesn't define whether or not you need a missing element. And that's where Reeves does not go, because that was not before the court in Reeves. And both the Sixth Circuit and the Supreme Court, but especially the Sixth Circuit, seems to say there's a missing element, that the person has to know that there's some administrative purpose going on. The Sixth Circuit was the first circuit to interpret the statute, and then that four successive circuits after that, every one of which is rejected, take a different view. So they sort of orphaned the Sixth Circuit. Well, actually, when you read the cases, only two of those go to this issue. The other two are First Amendment does not apply. So we believe, though, that the vagueness issue is what causes this, and Johnson supports that. And Johnson, the very reason the Supreme Court and the Sixth Circuit has construed obstruction statutes as to have this extra element is to avoid vagueness. Supreme Court cases like Cohen Grocery and Cortez, courts support this idea. But the Due Process Clause requires this. That's our position, Your Honor. Let's say you're correct that there's a problem with count one, either vagueness or because there's no proceeding here. You say that that tainted, if count one shouldn't have gone to trial, that taints the other counts, which were the filing of false tax return counts. What authority says that if there's a problem with one count, the other counts under different statutes are automatically thrown out, too? No authority that I cite. Practically speaking, if you just get count one dismissed, there's really no difference, right? You need to get them all dismissed to get your client out of prison. Not being able to agree with that, I would point out that in this particular case, not only was there a problem with this under vagueness, but paragraph 18 through 20 in 22e of the indictment alleged things that she had already been found guilty of and punished for. So there's a little bit of a double jeopardy problem. Right. I mean, she got the same sentence on each count. So if you just threw out count one, she's still facing the prison sentence on the other count. So how does, if you're right that count one has a problem, why does that require us to throw out the other counts as well? Well, let's start with the ability of the government then to put in her obstruction, quote unquote, of justice before the Western District of North Carolina. That's extraneous to whether or not her tax returns for 2007, 2008, and 2009 are proper and correct. Let's put in that they put in those portions of her testimony that were otherwise inadmissible, that they brought in the fact that she did other people's tax returns improperly, that at JATS, she didn't have the proper paperwork. She didn't have 1099. She didn't have W-2s. All those are extraneous to whether or not her tax returns for 2007, 2008, and 2009 were proper or not. And so, yes, there's huge prejudice. And I might point out, one of the things is the government talks about scheme. The word scheme nowhere occurs in this indictment. There's no allegation of a conspiracy, no allegation of a scheme, even though the government witnesses that they put on are participants in this alleged count one crime. I'd like to go on a little bit about restitution there also, because while the people, the witnesses testified about 2007, 2008, and 2009, there is no testimony from any their wages at JATS for 2004, 2005, or 2006. And the testimony, the record testimony is solely that Agent Fuller took for 2004, 2005, and 2006, only dependent upon bank records, period. That's the only record testimony. And the record testimony also is that Fuller didn't count every check that said for payroll or for expense. He just took the ones he believed were payroll and expense. But for restitution especially, you have to look at those damages that are victims lost that are proved on the record. And there is no proof of any loss of 2000, or sufficient proof of the loss for 2004, 2005, and 2006. So the restitution amount should be reduced at least to the 177. Why can't we just modify that? Assuming you're correct, and I think you are. I'm not saying you can't, Your Honor. We can just modify that sentence here instead of sending it back to the district court. As to restitution, I'm not saying you can't, Your Honor. I'm just saying that I'm correct and you should modify it. Yes. Now it also goes... I'm just saying that this court, rather than remanding the case to the district court and go through... For you to change the sentence to modify... It's just a correction to be sure that the restitution is a condition of supervised release rather than otherwise being pulled back into the part of the Senate. Once you start going through the whole discussion of it, I think we simply can modify that and correct that problem. And I'm not disagreeing, Your Honor. Okay. That goes to the restitution. I don't think you disagree with that. I'm sorry, Your Honor. I think you would agree with that. I'm agreeing with you. However, as to the sentencing amount, though, that's the difference between an 18 and a 16 on the base level. And the argument as to restitution amount and the argument as to sentencing value, I understand that they're different and that as to the restitution, you have to have the exact amount proved, whereas as to the sentencing value, there's more discretion with the trial court. However, it has the same problems. There's insufficient evidence to support any value above the $177,000. In fact, I agree with Justice Scalia in Gall v. U.S. that items like this are actually an evidentiary issue that should be decided by a jury. I keep losing that argument, but I'd like to keep making it just as I did the Booker argument all the way until Booker came out. So, may it please the Court, if you have any questions. Thank you, sir. I think we've got your argument. Appreciate it. And you've reserved rebuttal time if you need it. Yes, Your Honor. I reserve five minutes. All right. Mr. Knapp. May it please the Courts, Counsel, Greg Knapp of the United States. I'll begin by addressing whether the Statute 26 U.S.C. 7212A requires as an element of the offense knowledge of a pending IRS action. It doesn't, just based on the plain language of the statute. The statute refers to corrupt endeavors to obstruct the due administration of this title, this title being the tax code, the revenue code. There's no reference to any proceeding, no reference to any action, no reference to any audit or anything of the like that would support grafting a pending IRS action element onto that statute. And besides the plain language of the statute, there is this Court's decision in Reeves, which expressly recognized that 7212A need not concern a proceeding. And so given the plain language of the statute, given this Court's decision in Reeves, there's no support for the defendant's argument, at least in this circuit, that 7212A requires a pending proceeding. Instead, the defendant is forced to rely exclusively on an outlier decision from the Sixth Circuit, United States v. Kossuth, which held contrary to every other circuit that has addressed the issue, that the statute does, in fact, have a pending proceeding requirement. But Kossuth, with respect, just got it wrong, because Kossuth relies on a flawed analogy to another obstruction statute, 18 U.S.C. 1503. But 1503 is significantly different than 7212A, because 1503 reaches corrupt endeavors to obstruct the due administration of justice. And that language is key, justice, because the justice reference presupposes the existence of a judicial proceeding, a court proceeding. The reason for that is because, unlike the tax system, the justice system is not continually operating upon Americans. Rather, it's only upon the commencement of a particular court proceeding, a particular judicial proceeding, that a defendant may obstruct that judicial proceeding in violation of 1503. And this Court recognized that in Reeves. It recognized that, unlike 7212A, 1503 presupposes the existence of a proceeding. And so, given Reeves, given the plain language of the statute, this Court should reaffirm what it already recognized in 1985 in Reeves, and that there is no pending proceeding requirement for Section 7212A. Do you agree we could just modify this restitution order? Well, I believe the restitution order is supported by the record. The challenge to the restitution order, as well as the tax cost calculation, generally finds the defendant — I'm not talking about the amount. I'm talking about the question of when you triggered the payment. Oh, I see. I see. All right. Well, first of all, I don't think this Court should address that issue, because, as we argue in our brief, that issue was waived. It wasn't developed as an argument below. Now, for the sake of completeness, and for the sake of argument, we fully brief that issue, and we put that forth so that this Court could see the issue. And so I appreciate Your Honor's question in that regard, but we stand by our waiver argument. Nonetheless, if the Court wants to consider it, I would suggest that, at most, it would be for plain error, and there's no plain error here, because it's not clear and obvious under this Court's precedent that a restitution order which potentially provides for some pre-supervised release payment of $25 a quarter as part of a restitution obligation that the defendant will have to pay anyway is plain error. And even if it were, it wouldn't affect substantial rights as required for reversal under plain error, because either way, the defendant is liable for the same amount of restitution. And we cite cases in support of that. That's not just my argument. That's similar to the Miller case out of this Court, in which it realized that, no, if the restitution amount isn't affected, it's not plain error. And so I would urge the Court in the first instance just not to— Assuming that, despite your erstwhile argument, we disagree, and just because it's a sentencing and because of the nature of it, on our own plenary eyesight, determined to make clear what may be clear, you wouldn't object that we could just do the modification? I'm not saying that we should. I get your argument. I'm not suggesting that the Court does not have that authority. Of course, the Court could do that. Got it. Got it. All I would say, and I realize I'm reiterating myself, is that it's not entirely clear under this Court's case law that this order is wrong. And so I would urge the Court to consider that in determining what relief it wants to grant. Got it. Back to the merits as to 7212, briefly as to the defendant's vagueness challenge, as an initial matter, the defendant makes no attempt to demonstrate that the statute is vague as applied to her conduct, and that's a threshold showing that she's required to make in order to succeed on her vagueness claim. In any event, if this Court wanted to consider the vagueness challenge, the facial validity of the statute, as has already been pointed out, that issue again is foreclosed by Reeves. I have a question about the way you charged the 7212 obstruction count. I don't think it's really been raised here, but, you know, the obstructive conduct that alleged is giving false testimony, not keeping records, I mean, that all to me fits within obstruction. But then you also say the filing of false tax returns, what, from 2004 to 2009, is part of the obstructive conduct. And then, of course, some of those years you also charge as their own counts of filing false tax returns. It seems to me that's multiplicitous. I mean, it's letting — it's a double jeopardy concern that the jury — the government gets two chances to convict the defendant of filing false tax returns. And there's a specific statute that addresses that, so I'm not sure why it's being swept up as part of obstruction. Do you want to address that? Yes, because, generally, the same conduct, the same criminal acts may potentially go to more than one offense. And the reason — and this Court's recognized that, provided there are different elements for two offenses, it can be assumed that Congress meant for there to be potentially more than one statute applicable. And in this case, there are different you referred to, the false return counts. The government has to prove that the defendant willfully filed a materially false tax return that she knew was false. Now, those tax returns, to the extent that they are part of her ongoing larger corrupt endeavor to misreport the income attributable to her at JATS and to JATS employees, they're also properly charged as that point. And — What if they weren't part of a larger corrupt endeavor? If she was just filing the false payments, all that stuff? That is to say, assume, just for hypothetical purposes, that there's just the false returns. Could it be recharged as a corrupt endeavor? I don't see any legal reason why not. However, I would say that I haven't seen a case like that where a corrupt endeavor charged under 7212 has been just based on the filing of false tax returns. Have you seen any — I couldn't find any cases where 7212 involved allegations of the false returns themselves, like, as part of a scheme, like is done here? There are cases to that effect. There are 7212 counts and cases discussing those charges that involve the filing of tax returns on behalf of, say, the defendant or multiple persons she's associated with. For example, I would cite — this isn't — this particular case isn't cited in the brief, but it's instructive. It's out of the Seventh Circuit, MADOC, MADOC, 108, Fed 3rd, 761, a 1997 case in which a 7212 charge was based on the filing of false tax returns. It's basically a PREPARE case, a PREPARE case filing false tax returns on behalf of multiple clients, and that tends to obstruct the administration of the tax code. There's also the Popkin case out of the Eleventh Circuit, which is cited in the briefs, and that involves a situation in which an attorney helped conceal his client's assets all the while filing false returns with the IRS to further that deception. So there are cases out there that consider the filing of false tax returns as part of a 7212a offense. As to — I wanted to briefly touch on the defendant's double jeopardy argument. Your Honor already broached that subject, but I wanted to respond in particular to an argument that she raises for the first time in her reply brief, which is collateral estoppel. Initially, because that argument is raised for the first time in the reply brief, this Court shouldn't consider it and should deem it waived. Nevertheless, without waiving waiver, I just want to make a point on the merits, which is that, initially, collateral estoppel can't apply here because there's no prior acquittal. In criminal prosecutions, the collateral estoppel doctrine applies to prevent the government from trying to re-prove a fact that it necessarily lost in a prior prosecution that led to an acquittal. Well, here there's no acquittal. The defendant was convicted of both offenses, the prior criminal contemp— Your argument is obvious. Then I'll move on. Then the — no, I appreciate that. I want to address what the Court is interested in. Then there is finally, I think, a real issue of dispute that perhaps warrants some more, and that is the tax loss calculation. Unless the Court would prefer me — unless Judge Tickerbotham, you'd prefer me to rest on the briefs, I'd do it. What you want to do, I understand you're arguing the obvious. I mean, you know, A is A, B is B, C is C. Yes, we got that. Well, then, if I may, I'll respond to something that was presented by my colleague that perhaps is warrant of a little bit more discussion just in the 10 minutes left. That is that this intersects both the restitution issue as well as the guidelines calculation, and that is the tax loss calculation. Generally, as Mr. Esmeyer set forth, the defendant challenges the government's calculation with respect to the 2004 to 2006 tax years, but she doesn't dispute the calculation for the later 2007 to 2009 tax years. And more specifically, the defendant spends a lot of time in her reply brief criticizing Revenue Agent 4's review of JATS banking records to identify compensation amounts that were paid to the JATS workers, and those compensation amounts, in turn, went into the tax loss calculation. But that argument, that criticism of the agent's review of banking records, really misses the point because the agent in calculating tax loss did not rely exclusively or even primarily on the banking records, on the payroll checks. He also relied on actual witness testimony and witness pretrial statements regarding additional cash amounts that the employees actually received. And that much is clear when you look at the agent's trial testimony regarding his methodology for calculating tax loss as well as statements in the sentencing papers which make clear that the compensation amounts that were actually used for calculating tax loss were different and larger than the amounts that would have been determined had the agent only focused on the bank records themselves. And so I wanted to clarify that point as it was raised just a few minutes ago. And with that, I'll be glad to answer any other questions the panel has. Thank you, sir. I think we have the government's argument. Thank you. Thank you for your time. Appreciate your thoroughness. Thank you. All right, Mr. Esmeyer, any rebuttal? Yes, Your Honor. First of all, as to double jeopardy, while it was not in the original motion to dismiss count one and there was no motion for new trial filed, the objections to the PSR, particularly starting with paragraph eight, which put in that those elements or those offenses of the PSR, the defendant objected that the PSR should not use for sentencing purposes any of the North Carolina offenses because they were barred by double jeopardy. And that's at ROA 5648, for instance. And that's just one of many instances in the objection to PSR in which double jeopardy was raised. And in fact, the double jeopardy argument itself as to obstruction of justice points was not only viable, but the U.S. government said in document 131 ROA 5759, the government admitted in its letter to the probation department that the conduct underlying the PSR obstruction enhancement, testifying falsely under oath and a show cause hearing in federal district court in Charlotte, North Carolina, was also alleged as an act in count one, 26 U.S.C. 7212A of the indictment. So the issue of double jeopardy, at least since I have been counsel, has always been raised. It was raised in the original brief. What the government is upset about is that I didn't use the word collateral estoppel. I don't have to use the words collateral estoppel. My client has not waived it because the double jeopardy has been raised both at sentencing in the original brief and in the reply brief. It is a pertinent issue in this case, and it did prejudice the other counts of conviction. Now, as to venue, we didn't really discuss it earlier, but this case started in North Carolina. The jazz action should have been tried in North Carolina. The U.S. Supreme Court says, and it's a constitutional right to be tried where the crime occurred. The U.S. Supreme Court in white says, you know, you're backed up on rebuttal. I mean, I know you represent the so you're going to the venue matter now that you're backed up. I mean, you represent a criminal client, but just so you know, we know that's your own rebuttal, and you know, you're just sort of taken back off. I mean, it's criminal. You get a little more slack, but you know. Well, I would like to go back and talk about vagueness, which he did talk about. You're still running. You've got two minutes. I'm just pointing out, you know. I'd like to point out, though, Your Honor, that Reeves itself has a fear that 7212A may run afoul of a vagueness issue. And the Johnson case, the recent Supreme Court case says, just because there are actions that obviously fall within the parameters, it must be clear. How is a person supposed to figure out? I'm the ordinary taxpayer, and I'm out there, and I make mistakes and errors, and somebody fouls against me on a criminal charge. How am I supposed to figure out that I also obstructed the governmental functions of the IRS? I think our tax code is just clear and plain. I think it's overly broad and vague and should be changed. We'll see if the current administration will do that. Well, it may be like your booker issue. It just took a while before you prevailed on that argument. So maybe your tax argument will not take as long. Who knows? Now, as to the issue of the trigger of the restitution argument, the Fifth Circuit has said that it reviews the legality of a restitution order award de novo even if the defendant did not object in the district court. But the issue is part and parcel of the objections which run throughout the objection that the violation of Code 26, not one of the issues that are under the Mandatory Victims Act or any other restitution act, the government has gone to saying, well, we can do it under supervised release. Well, if it's under supervised release, you have to start it when supervised release starts. And so the objection was not waived. It was stated on multiple occasions within the objections. I think you prevailed on the restitution matter on the first go-round. Do you want to undo it? Most people don't revolt, don't try to undo something they might have gotten on the first out there. The time is not obligatory. If you won, you know, you can always give it back. I suggest you stop with the red light here. Thank you, Your Honor. All right. Thank you. Your able counsel on behalf of you.